# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MULTIFEEDER TECHNOLOGY, INC., | Civil No. 09-1090 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| BRITISH CONFECTIONERY COMPANY LIMITED, | |
| Defendant. | |

Kristin L. Kingsbury and William Christopher Penwell, **SIEGEL, BRILL, GREUPNER, DUFFY & FOSTER, P.A.**, 100 Washington Avenue South, Suite 1300, Minneapolis, MN 55401, for plaintiff.

R. Christopher Sur and Paul B. Civello, **MASLON EDELMAN BORMAN & BRAND, LLP**, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for defendant.

Plaintiff Multifeeder Technology, Inc. ("Multifeeder") brought this action against British Confectionery Company Limited ("British") for breach of contract. British filed the instant motion to dismiss for improper venue, arguing that the parties are bound by a forum selection clause that identifies the proper venue as the Canadian Province of Newfoundland and Labrador. (Docket No. 6.) For the reasons stated below, the Court denies the motion.

**BACKGROUND**

Multifeeder is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. (Complaint ¶ 1, Docket No. 1.) It designs and manufactures "high-performance friction feeders and systems for use in the packaging, printing, and mailing industries." (*Id.*) British is a Canadian corporation with its principal place of business in Mount Pearl, which is located in the Canadian Province of Newfoundland and Labrador. (Connolly Aff. ¶ 2, Docket No. 10.) British has a plant in Mount Pearl where it manufactures "break open lottery tickets." (*Id.*)

On September 9, 2008, Multifeeder and British entered into a written contract for Multifeeder to design and produce a customized system to print two-sided break-open lottery tickets (the "System"). (Complaint ¶¶ 7, 39, Docket No. 1; *id.* Ex. C.) Multifeeder alleges that the contract price of the System was $868,392.25, and that British subsequently requested alterations adding $199,232.00 to that price. (*Id.* ¶ 37.) Multifeeder further alleges that in April 2009, British attempted to cancel its purchase of the System, having paid $434,196.12 toward the purchase price. (*Id.* ¶¶ 19, 37.) The System remains in a Minnesota warehouse leased by Multifeeder. (*Id.* ¶¶ 4, 6.)

On May 8, 2009, Multifeeder brought suit in the United States District Court for the District of Minnesota, alleging breach of contract (Count I), breach of implied contract (Count II), and "damages pursuant to Minn. Stat. 336.2-708 and 336.2-709" (Count III). (*Id.* ¶¶ 21-41.) On June 15, 2009, British filed a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that the

dispute is governed by a forum selection clause that requires all disputes to be venued in the courts of the Province of Newfoundland and Labrador.

# ANALYSIS

## I.   MOTION TO DISMISS

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for improper venue.  The Eighth Circuit has recognized that "there is some controversy as to whether Rule 12(b)(3) or 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on improper venue when the issue turns on a forum selection clause in the parties' underlying contract." *Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 545 n.5 (8th Cir. 2003); *see Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th  Cir. 1996) (citing cases).  The relevant distinction between Rule 12(b)(6) and Rule 12(b)(3) is that Rule 12(b)(6) requires the court to accept the pleadings as true, while Rule 12(b)(3) permits the court to consider facts outside the pleadings and does not require the court to accept the pleadings as true.  *Argueta*, 87 F.3d at 324.  Multifeeder argues that the Court must "take[] the facts alleged in the Complaint as true," (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss for Improper Venue or Alternative Mot. to Transfer Venue at 5, Docket No. 14.), while British argues that because it has made its motion under Rule 12(b)(3), "'the court does not accept the pleadings as true and considers facts outside the pleadings.'"  (Def.'s Mem. in Supp. of Mot. to Dismiss at 4, Docket No. 8 (quoting *BTC-USA Corp. v. Novacare*, No. 07-3998, 2008 WL 2465814, at *2 (D. Minn.

June 16, 2008).)  Under either standard, however, the forum selection clause at issue does not compel dismissal.  Therefore, "the Court need not decide the issue still unresolved by the Eighth Circuit."  *See BTC-USA Corp.*, 2008 WL 2456814, at *2.

**B.**     *Erie*

The parties suggest that the Court should use federal law to construe the validity of the forum selection clause, and the Court therefore will do so.  "Several of the federal circuits have concluded that federal law . . . governs the validity of forum selection clauses" in diversity cases, *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006), but the issue remains "an open question" in the Eighth Circuit.  *Rainforest Cafe*, 340 F.3d at 546.  Neither Multifeeder nor British argues that state law should apply.  (*See* Def.'s Mem. in Supp. of Mot. to Dismiss at 5, Docket No. 8; Pl.'s Mem. in Opp'n to Mot. to Dismiss at 5-8, Docket No. 14.)  Because "both parties operate under the assumption that the federal law controls the question of whether th[e] forum selection clause applies," the Court will "indulge their suggestion."  *Rainforest Cafe*, 340 F.3d at 546; *see also Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001).

**C.     The Forum Selection Clause in Article 10(j) of the September 9, 2008 Agreement Governs this Dispute.**

Three documents relate to the parties' September 9, 2008 contract.  The first document is a proposal (the "Proposal") that Mark Nordling of Multifeeder sent to Blair Connolly of British as an email attachment on September 9, 2008.  (*See* Nordling Aff.

¶ 2, Docket No. 15; Connolly Aff. ¶ 4, Docket No. 10; Complaint Ex. B, Docket No. 1.)

The second document is the Multifeeder Technology, Inc. (MFT) Terms and Conditions

(the "Multifeeder Terms and Conditions"), which is referenced in the "TERMS" section

of the Proposal on the (unsigned) signature page, and which appears in full at the URL[1]

http://www.multifeeder.com/terms.html.  (Complaint Ex. B. at 8, Docket No. 1; *id.* Ex.

A; Nordling Aff. ¶ 3, Docket No. 15.)  The third document is an agreement executed on

September 9, 2008 by Mark Nordling and Blair Connolly (the "Agreement").  (Complaint

Ex. C, Docket No. 1.)

The Multifeeder Terms and Conditions and the Agreement have contradictory

forum selection provisions.  Paragraph 12 of the Multifeeder Terms and Conditions

states:

> Forum Selection Clause.  Buyer and Seller agree that **all disputes**, claims,
> controversies and disagreements relating to or arising out of this Agreement
> **are subject to the exclusive jurisdiction and venue of the state and
> federal courts of Minnesota**, of the United States of America.  Buyer
> waives any objections to jurisdiction or venue in any proceeding before any
> such court in Minnesota and hereby submits to the exclusive jurisdiction of
> any such court in Minnesota.  Buyer and Seller agree that the exclusive
> choice of forum set forth in this section does not prohibit the enforcement
> of any judgment obtained in that forum or any other forum.

(Complaint Ex. A ¶ 12, Docket No. 1 (emphasis added).)  Article 10(j) of the Agreement

states:

> This Agreement shall be governed by, and construed and interpreted under,
> the laws of the Province of Newfoundland and Labrador without reference
> to conflicts of laws principles.  **Each party hereby submits itself** for the

---

[1] A URL is a "uniform resource locator," commonly referred to as an internet address or
web address.  *Gregerson v. Vilana Fin., Inc.*, No. 06-1164, 2007 WL 2509718, at *6 (D. Minn.
Aug. 31, 2007).

sole purpose of this Agreement and any controversy arising hereunder **to the jurisdiction of the courts located in the Province of Newfoundland and Labrador** and any courts of appeal therefrom, and waives any objection on the grounds of lack of jurisdiction (*forum non conveniens* or otherwise) to the exercise of such jurisdiction over it by any such courts.

(Complaint Ex. C at 8, Docket No. 1 (emphasis added).)

The Proposal attempts to incorporate by reference the Multifeeder Terms and Conditions. It is possible to incorporate by reference a document that exists on the internet by providing the URL for that document. *Cf., e.g.*, *Gemnet Express, Inc. v. Fed. Express Corp.*, No. 06-2648, 2009 WL 928299, at *7 (S.D.N.Y. Mar. 30, 2009). The Proposal purports to incorporate the Multifeeder Terms and Conditions by reference by listing several terms and then stating, "Refer to the complete Multifeeder Technology, Inc. Terms and Conditions found at: www.multifeeder.com/terms.html." (Complaint Ex. B at 8, Docket No. 1.) Immediately below the signature line for the "Purchaser Representative," the Proposal states, "I have read Multifeeder Terms and Conditions." (*Id.*)

Even assuming that the Multifeeder Terms and Conditions are incorporated in their entirety into the Proposal, the forum selection clause in Paragraph 12 of the Multifeeder Terms and Conditions is not incorporated into the Agreement. Article 2(a) of the Agreement states, "The parties understand and agree that, **unless modified by the terms of this Agreement**, MULTIFEEDER will deliver the MULTIFEEDER Products to BRITISH in accordance with the **MULTIFEEDER Proposal**." (Complaint Ex. C at 2, Docket No. 1 (emphases added).) The terms of Article 10(j) in the Agreement modify

the Proposal by introducing a new forum selection provision. Therefore, Paragraph 12 of the Multifeeder Terms and Conditions is not part of the Agreement.

**D.     The Forum Selection Clause in Article 10(j) of the Agreement Is Permissive, Not Mandatory.**

"Forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable or unjust or the clause is shown to be invalid for such reason as fraud or overreaching." *Taylor Inv.*, 169 F. Supp. 2d at 1060-61. In determining how to "enforce" Article 10(j) of the Agreement, the Court must determine whether the forum selection clause is mandatory or permissive.

Forum selection clauses may be mandatory, "such that an action on the contract may be maintained only in" the selected forum, or permissive, "such that an action on the contract may be maintained in other reasonably convenient forums where personal jurisdiction exists." *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). If Article 10(j) is mandatory, then the Court must exercise its discretion to determine whether it should be enforced. If Article 10(j) is permissive, then the Agreement does not prohibit either party from bringing an action on the contract in another forum, and therefore Article 10(j) does not render venue in the District of Minnesota improper.

To determine whether a forum selection clause is mandatory or permissive, courts examine the specific language of the provision. Courts generally begin with a presumption that a forum selection clause is permissive, and therefore "mandatory [forum selection] clauses **must contain specific language** indicating the parties' intent to make jurisdiction exclusive." *Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262

F. Supp. 2d 1004, 1009 (D. Minn. 2003) (emphasis added). "Generally, courts have found that use of the words 'may' and 'should' signify permissive clauses, while the use of the words 'shall,' 'will' or 'must' signify mandatory clauses." *Id.*

Courts in this jurisdiction have repeatedly found that phrases similar to "submits . . . to the jurisdiction," without more, are permissive. In *Florida State Board of Administration v. Law Engineering & Environmental Services, Inc.*, the district court found that a clause stating that a party "hereby irrevocably submits to" a particular jurisdiction "contains no mandatory language and evinces no intent to make jurisdiction exclusive." 262 F. Supp. 2d at 1008, 1010. In *City of Minneapolis v. Time Warner Cable, Inc.*, the clause stating that the parties "hereby consent to, and submit to, the laws, jurisdiction and courts of" a jurisdiction is "permissive, not mandatory. This is indicated by the lack of specific language indicating that the clause is mandatory, such as 'exclusive,' 'sole,' or 'only.'" No. 05-994, 2005 WL 3036645, at *5 (D. Minn. Nov. 10, 2005). In *Dunne v. Libbra*, the Eighth Circuit concluded that the clause "the parties consent to jurisdiction" is permissive because it "does not use the words 'exclusive,' 'only,' 'must,' or any other terms that might suggest exclusivity." 330 F.3d at 1063-64.

Courts finding a forum selection clause to be mandatory emphasize the existence of language that shows the parties' intent to identify an exclusive forum for resolving contractual disputes. In *Twin Lake Sales, LLC v. Hunter's Specialties, Inc.*, the court construed a clause stating, "This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa, and the parties hereto consent to and accept the jurisdiction of the Courts of the State of Iowa . . . ." No. 05-555, 2005 WL

1593361, at *1 (D. Minn. July 6, 2005).  The court concluded that the forum selection clause is mandatory, as

> indicated by the first words of the clause: "This Agreement **shall** . . . ."  The [Agreement] then sets forth a choice of law provision mandating Iowa law govern the dispute, followed by the forum selection clause: ". . . **and** the parties hereto consent to and accept the jurisdiction of the Courts of the State of Iowa."  The word "shall," combined with the conjunctive "and," indicate a clear intention that both the choice of law and forum selection clauses were considered mandatory by the parties at the time [the Agreement] was executed.

*Id.* at *3 (emphases and ellipses in original).  In *GMAC/Residential Funding Corp. v. Infinity Mortgage, Inc.*, the court concluded that the following "language is more than sufficient to support a finding of exclusivity":

> Each of the parties **irrevocably submits to the jurisdiction** of any state or federal court located in Hennepin County, Minnesota, over any action, suit, or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties **irrevocably agrees that all claims** in respect of any such action or proceeding **may be heard** or determined in such state or federal court.  Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance or any such action or proceeding. . . .  Each of the parties further **agrees not to institute any legal actions** or process against the other party . . . arising out of or relating to this Contract **in any court other than as hereinabove specified** in this paragraph. . . .

No. 02-4090, 2003 WL 21406189, at *1, 3 (D. Minn. June 13, 2003) (emphases added).

In *Holm v. Art Leather Manufacturing, Inc.*, the court concluded that the following sentence included a mandatory forum selection clause: "In the event of **any controversy** or dispute hereunder, the parties **agree to submit the same** to the United States Courts in the State of New York and each **hereby expressly submits himself or itself** to the personal jurisdiction of such courts."  No. 06-1077, 2006 WL 1662722, at *1 (D. Minn.

June 12, 2006) (emphases added).  The court observed that "[i]mplicit in an agreement to submit a dispute to a particular forum, as the parties have done in this case, is an agreement that the named forum is the exclusive forum in which the dispute can be pursued consistent with the parties' agreement." *Id.* at *3.

Article 10(j) does not "contain specific language indicating the parties' intent to make jurisdiction exclusive," and therefore it is permissive.[2]  *See Fla. State Bd. of Admin.*, 262 F. Supp. 2d at 1009.  The relevant language in Article 10(j) states, "Each party hereby submits itself for the sole purpose of this Agreement and any controversy arising hereunder to the jurisdiction of the courts located in the Province of Newfoundland and Labrador[.]"  This language is a "jurisdiction granting" clause, rather than a "mandatory forum selection clause[.]"  *See Kirckof v. Brown*, No. 01-476, 2002 WL 31718394, at *2 (D. Minn. Nov. 27, 2002).  Article 10(j) simply confers jurisdiction on the courts of the Province of Newfoundland and Labrador, should one party bring suit

---

[2] *Sonus-USA, Inc. v. Thomas W. Lyons, Inc.*, 966 So. 2d 992 (Fla. Dist. Ct. App. 2007), a case cited by British, did not hold that the word "submit," without more, renders a forum selection clause mandatory.  The forum selection clause at issue in that case stated, "Any controversy relating to this agreement . . . and any proceeding relating thereto **shall be held** in Minneapolis, Minnesota.  The parties hereby **submit** to jurisdiction for any enforcement of this agreement in Minnesota."  *Id.* at 933 (emphases added).  The party arguing against enforcement of this clause argued "that the word 'submit' connotes consent," thereby rendering the forum selection provision permissive.  *Id.* at 993.  The court rejected this "strained" view, noting that the word "shall" in the first sentence was "the specific language that makes jurisdiction in Minnesota mandatory."  *Id.*  The court concluded that the second sentence "only serves to confirm that when suit is brought in Minnesota, there will not be a fight about whether the opposing party is required to defend there."  *Id.* at 993-94.  The court then turned to the definition of the word "submit," and noted that "the dictionary definition, as well as the context in which the word is used in the clause, demonstrate that the provision is mandatory."  *Id.* at 994.  The court considered other cases construing forum selection clauses with the word "submit" as permissive, but concluded that "[w]hen considered as a whole, the language selected by the parties in this case is mandatory."  *Id.*  Article 10(j), by contrast, does not state that disputes "shall" or "must" be brought in a particular forum.

there.  *Cf. id.* at *2.  Unlike the provision at issue in *Twin Lake Sales*, the clause in Article 10(j) does not appear in the same sentence as the mandatory choice of law provision, introduced by the word "shall."  Unlike the provision at issue in *GMAC/Residential Funding Corp.*, Article 10(j) does not expressly prohibit the parties from bringing claims in other jurisdictions.  Unlike the provision at issue in *Holm*, Article 10(j) does not state that the parties agree to submit any controversy to a particular jurisdiction.  Where, as here, a clause does nothing more than specify a jurisdiction, courts have declined to infer an intent to make such jurisdiction exclusive in the absence of any additional language indicating such intent.  *See Kirckof*, 2002 WL 31718394, at *2.  The Court therefore declines to adopt British's reading of Article 10(j).

Because the forum selection clause in Article 10(j) is permissive, rather than mandatory, it does not render venue in this Court improper or divest this Court of jurisdiction, and the Court denies the motion to dismiss for improper venue.

## ORDER

Based on the submissions of the parties, the arguments of counsel and all the files, records, and proceedings herein, the **IT IS HEREBY ORDERED** that British Confectionery Company Limited's Motion to Dismiss [Docket No. 6] is **DENIED**.

DATED:  December 15, 2009          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                   United States District Judge