**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

MULTIFEEDER TECHNOLOGY, INC. ,
A MINNESOTA CORPORATION,

PLAINTIFF,

V.

BRITISH CONFECTIONERY COMPANY LIMITED
a duly incorporated under the laws of Province of Newfoundland, DOMINO AMJET, INC.

DEFENDANTS.

CIVIL NO. 09-1090 (JRT/AJB)

**FINDINGS OF FACT AND ELECTRONICALLY STORED INFORMATION SEARCH PROTOCOL ORDER**

---

Kristin L. Kingsbury William Christopher Penwell, Gerald S. Duffy, and Sara B. Kalis, **SIEGEL BRILL GREUPNER DUFFY & FOSTER, PA**, 100 Washington Avenue South, Suite 1300, Minneapolis MN 55401 (for Plaintiff);

Paul B Civello, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402 (for Defendant British Confectionery Company Limited);

Cynthia A. Moyer and Sarah C. S. McLaren, **FREDRIKSON & BYRON, PA**, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425 (for Defendant Domino AmJet, Inc.).

This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on the parties' proposed search protocols.

Based upon the record, this Court makes the following:

**FINDINGS OF FACT**

1. Plaintiff Multifeeder Technology, Inc.'s (Multifeeder) Complaint alleges as follows:

a. In June 2008, Defendant British Confectionery Company Limited (British Confectionary) requested that Multifeeder submit proposals to British Confectionary to perform work for British Confectionary. (Compl. ¶ 7, May 8, 2009.)

b. After submitting multiple proposals and visiting British Confectionary's facility, in September 2008, Multifeeder submitted a proposal that was accepted by British Confectionary. (*Id.* at ¶¶ 8-9.)

c. The parties entered into an agreement based upon the accepted proposal. (*Id.* at ¶¶ 9-10.)

d. Multifeeder began to work to fulfill the agreement. (*Id.* at ¶ 13.)

e. British Confectionary submitted multiple changes to the proposal and orally assured Multifeeder that Multifeeder would be compensated for accommodating these modifications. (*Id.* at ¶ 13.)

f. During performance testing of Multifeeder's work, the parties learned that Defendant Domino AmJet's work for British Confectionary was incompatible with Multifeeder's work for British Confectionary. (*Id.* at ¶ 17.)

g. In March 2009, British Confectionary informed Multifeeder that Multifeeder had defaulted on the agreement by not fulfilling the proposal and the changes to the proposal. (*Id.* at ¶ 18.)

h. In April 2009, British Confectionary cancelled the agreement. (*Id.* at ¶ 19.)

2. Based upon these allegations, Multifeeder asserts claims of breach of contract, breach of implied contract, and damages pursuant to Minn. Stat. §§ 336.2-708 and 336.2-709. [Docket No. 1.]

3. A Protective Order [Docket No. 41] was entered in the present case on April 8, 2010.

4. Multifeeder filed a Motion for Sanctions for Violation of Discovery Order, Motion for Contempt, and Motion to Modify Scheduling Order [Docket No. 63] on March 9, 2011. The Motion was based upon Multifeeder's allegations that British Confectionary failed to conduct a reasonable search for information responsive to Multifeeder's discovery requests. British Confectionary acknowledged problems with its initial document production.

5. On March 25, 2011, this Court granted in part and denied in part Multifeeder's motion. The Order on Motion for Sanctions and Motion to Modify Scheduling [Docket No. 79] directed as follows:

a. "Defendant British shall pay to plaintiff Multifeeder Technology, Inc. (Multifeeder) the amount of $5,000 for costs incurred in bringing the present motion." (Order ¶ 3, Mar. 25, 2011.)

b. "The parties shall meet and confer to discuss and prepare a stipulation for approval by the court for the purposes of establishing a protocol for remaining electronic discovery in this action. The stipulation shall be submitted to the court on or before April 8, 2011. In the event that the parties are unable to reach agreement/stipulation on electronic discovery, including assessment of costs, each party shall submit an independent proposal from which the court will construct an Order establishing an electronic discovery protocol and assessing costs for implementation of the protocol." (*Id.* at ¶ 5.)

6. Third-party expert discovery of British Confectionary's electronically stored information is necessary to ensure that British Confectionary has produced all relevant, nonprivileged information sought by Multifeeder.

7. The parties were unable to reach an agreement or stipulation regarding electronic discovery and both parties submitted proposals for this Court's review. This Court has reviewed the proposals. The parties proposals contain the following areas of disagreement:

a. Whether discovery by a third party is warranted;

b. How the cost for electronic discovery shall be borne by the parties;

c. The extent of electronic discovery; and

d. The extent of the search parameters, including what keywords are to be used.

8. Multifeeder's proposal included the affidavit of Mark Latterman of Computer Forensic Services, Inc. (CFS).

9. British Confectionary's proposal contained no expert affidavit, no substantive proposal for a third-party search, and no reasonable assurances as to how its proposed electronic search protocol would avoid the search deficiencies that led to the previous order of sanctions.

[The remainder of this page was left intentionally blank.]

Based upon the aforementioned findings of fact, **IT IS HEREBY ORDERED**:

1. Mark Lanterman and CFS (collectively hereafter referred to as CFS) shall be the only third-party expert to implement this protocol order.

   a. From the date of this order, CFS shall be deemed a third-party expert and CFS shall cease all other work on behalf of either party unless expressly permitted by this order.

   b. CFS shall be bound by the Stipulated Protective Order [Docket No. 41] governing this matter. All information gathered by CFS in implementing this order shall be deemed "CONFIDENTIAL" within the meaning of the Stipulated Protective Order.

   c. CFS shall not disclose to the parties to this matter or any third parties any information gathered in implementing this order unless expressly permitted by this order.

   d. Except as expressly provided by this order, during and following fulfillment of the search protocol (paragraphs 1 through 10 of this order), CFS shall be prohibited in this matter from working in any capacity for any party to this matter.

   e. CFS shall have sixty days from the entry of this order to complete this search protocol (paragraphs 1 through 10 of this order).

   f. Counsel for Multifeeder shall immediately provide CFS with copies of this order and the Stipulated Protective Order [Docket No. 41].

2. British Confectionary shall provide CFS with reasonable access to its personnel and facilities so that CFS can implement this protocol.

3. The following individuals constitute custodians of relevant data (Custodians) with British Confectionary:

a. Blair Connolly

b. Colin Walsh

c. David Connolly, Jr.

d. David Connolly, Sr.

e. Terry Reardon

These individuals work with, for, or on behalf of British Confectionary and its affiliates, including but not limited to Atlantic Gaming, Inc., British Bazaar Company Limited, and Atlantic Star Satellite Bing Network.

4. CFS will create an accurate representation (or forensic image) of each Custodian's person computer(s) that has been under the control of the Custodians from October 1, 2007, through the present time.

a. CFS will create the accurate representation of each Custodian's personal computer either on site at each computer's location, or in CFS's offices if the computers are transported to CFS. If an accurate representation is created on site, then CFS will make every reasonable effort to ensure that the creation process is not unduly disruptive and will make every reasonable effort to create the accurate representations in a timely manner.

b. The term "control" shall be construed so as to include those personal computers (1) the purchase of which has been reimbursed by British Confectionary or its affiliates, (2) that are or have been issued or assigned to Custodians by British Confectionary or its affiliates, or (3) that are authorized for use by Custodians by

British Confectionary or its affiliates, regardless of whether or not the personal computers are on location at British Confectionary or its affiliates' places of business. "Control" shall not extent to those personal computers owned by Custodians, which have been used by Custodians for only incidental business purposes.

c. The term "personal computer" shall extend to all desktop computers, laptop computers, netbook computers, tablet computers, and workstations as well as all servers, mainframes, and supercomputers to which the personal computer is networked. The term "personal computer" shall not extend to Personal Digital Assistants (PDAs) or cellular telephones with the capacity to send and receive e-mails.

5. CFS will create an accurate representation of each personal computer regardless of the file or operating system. The creation of this accurate representation shall not cause any damage to any personal computer.

6. From the accurate representation CFS will recreate each Custodian's personnel computer(s) from which CFS will be able to analyze and recover data in the same manner as if CFS were working from the original device.

7. The following words shall constitute keywords for the purpose of this order:

| | | |
|---|---|---|
| 12of5 | ALC [run case-sensitive] | Atlantic Lottery Commission |
| 15685 | alc.ca | Atlantic Lottery Corporation |
| 15685R (or –R) | alison.stultz | automatic product loader |
| 15714 | alisons | Bar code |
| 15714R (or –R) | alisonstultz | Barber |
| 16140 | arildvedoy | barberd |
| 16140R (or –R) | Astultz | barbertech |
| 750 | Atlantic Lottery | |
| A400 | | |

Barcode
Bar-code
BF Consulting
bobdavidson
brownm
Cabak
collator
Conveyor
d.simmons
dale.rawhoof
daler
dalerawhoof
dan.barber
dan.simmons
dan@
danbarber
daniel.barber
daniel.simmons
danielbarber
danielsimmons
dansimmons
dave.ellen
davee
daveellen
david.ellen
davide
davidellen
Davidson
dbarber
Dellen
dltech@golden.net
dmenchion
Domino
Domino Amjet
Domino Printing
Domino UK
dominoamjet.com
domino-na
domino-printing.com
domino-printingsolutions.ca
don.menchion
donald.menchion
donaldm
donaldmenchion
donm
donmenchion
Dorner
dsimmons@ottenheimerbaker.com
duval
ellend
Factory Acceptance Test
feeder
feeder width
flatness
friction feeder
GEW UV
gregcabak
GT Controller
Gurney
Heidtke
Helgeson
I2of5
ian.stuart
ians
ianstuart
Imaoka
imaokap
Istuart
Ivanov
ivanovv
jonathan.phillips
jonathanphillips
Jphillips
K100
Kalm
keelym
Lavoie
lavoiey
lduval
Longford
louise.duval
louise.duval@alc.ca
louiseduval
mark.keely
markk
markkeely
marknordling
martin.slepkov
martinslepkov
marty.slepkov
martyslepkov
mbrown
menchiond
MFT750
MFT950
michael.brown
mike.brown
mikekalm
mkeely
mslepkov
mslepkov@sympatico.ca
Multifeeder
Multifeeder Technology
Multifeeder Technology Inc.
Natgraph stacker
nealnordling
paul.imaoka
pauli
paulimaoka
pdf417 or pdf 417
PDF417 or PDF 417
pettipas
Phillips
phillipsj
Pimaoka
print heads
print quality
product loader
Rawhoof
rawhoofd

| | | |
|---|---|---|
| registration table | simmonsd | UV curing |
| RIMA stacker | Slepkov | vacuum table conveyor |
| ryanhelgeson | slepkovm | vanio.ivanov |
| sean.pettipas | spettipas | vanioi |
| sean.pettipas@alc.ca | steveheidtke | vanioivanov |
| Seanpettipas | Stuart | Vedoy |
| shawn.pettipas | stuarti | ylavoie |
| shawnpettipas | stultza | yves.lavoie |
| sheet registration | tolerance | Yvesl |
| Simmons | transport | Yveslavoie |

8. The period of time from October 1, 2007, through December 31, 2009, shall constitute the "relevant period."

9. "Relevant documents" shall be defined as those documents that contain the keywords listed in paragraph 7 and that were created, last accessed, last altered, or deleted within the relevant period described in paragraph 8.

10. Following "recreation" of each Custodian's personal computer(s), CFS shall undertake the following procedure:

a. CFS shall perform an electronic search of each Custodian's personal computer(s) to locate relevant documents.

b. Following these searches, CFS will prepare a detailed log. The detailed log will contain a list of all relevant documents on each personal computer and state the document's file name, file extension, the size of the file, and the location of the file on the hard drive, and the date and time when the file was created, last accessed, and last altered.

c. CFS shall provide a copy of the detailed log to the Court under seal by mailing said copy to U.S. Chief Magistrate Judge Arthur J. Boylan, U.S. Courthouse, 300 South Fourth Street, Courtroom 9E, Minneapolis, MN 55415.

d. CFS shall provide British Confectionary's counsel with copies of the detailed log and all relevant documents.

11. Within 30 days of British Confectionary's counsel receiving a copy of all relevant documents from CFS, British Confectionary shall:

a. Identify for Multifeeder those relevant documents that have already been produced or have already been documented on a privilege log.

b. Produce to Multifeeder those documents on the detailed log that are responsive to Multifeeder's discovery requests and have not previously been produced.

c. Produce to Multifeeder a detailed privilege log for all relevant documents that British Confectionary contends are irrelevant or subject to protection under Fed. R. Civ. P. 26(b)(5), and that have not previously been produced.

12. Multifeeder shall bear the following costs related to the implementation of this order:

a. CFS's travel costs, including airfare and accommodations.

b. CFS's fees for searching the "recreations" of each Custodian's personal computer(s) and creating the detailed log and copies of relevant documents.

c. All costs reasonably incurred by CFS in the implementation of this protocol that have not otherwise been designated as the responsibility of British Confectionery.

13. British Confectionery shall bear the following costs related to the implementation of this order:

a. CFS's time for travel, at CFS's hourly rate of $275/hour.

a. CFS's hourly rate—$275/hour—to create the accurate representations of the personal computers. British Confectionary shall not bear the cost of more than 24

personnel work hours used in creating the accurate representations of the personal computers.

b. CFS's per device fee of $300 per personal computer and $500 per server drive.

14. In addition to those communications otherwise permitted by this order, CFS may communicate with each party to:

a. Schedule or otherwise arrange for the implementation of this protocol;

b. Answer any inquiries about the technical steps CFS will undertake to fulfill this protocol;

c. Inform the parties of CFS's progress in completing this protocol; or

d. Provide each party with a bill of costs.

15. Within 60 days of the termination of this litigation, outside counsel for Multifeeder shall notify CFS that litigation has terminated. Following said notification, CFS shall destroy the "recreations" of the personal computers, the accurate representations of the personal computers, the detailed logs described in paragraph 10 of this order, and any relevant documents as defined by paragraph 9 of this order.

Dated: 4/26/11

s/ Arthur J. Boylan
Chief Magistrate Judge Arthur J. Boylan
United States District Court